# LOUIS NASSE v. ADRIATIC MINING COMPANY.[1]

December 8, 1911.

Nos. 17,296—(101).

**Contributory negligence.**

The promise by the master to furnish a skip tender in underground mining operations did not relieve the plaintiff, as shift boss, from giving the signal which controlled the skip.

*Held,* that the plaintiff was guilty of contributory negligence in attempting to push an ore car out of the way of the descending skip, instead of giving the usual signal to have it stopped.

Action in the district court for St. Louis county to recover $10,000 for personal injuries. The answer admitted that plaintiff was employed in the mine as a shift boss; that he received an injury to one of his hands while in the performance of his duties, and alleged that his injury was the result of his own carelessness. The reply was a general denial. The case was tried before Ensign, J., who at the close of the evidence directed a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Samuel A. Anderson* and *Warner E. Whipple,* for appellant.
*Theo. Hollister,* for respondent.

LEWIS, J.

Defendant operated an iron mine, and plaintiff was a shift boss in charge of twenty miners. The shaft was upright, and less than one hundred seventy-five feet in depth. The main drift extended to a distance of about seventy-five feet from the bottom of the shaft, and lateral drifts extended from both sides. The skip which raised the ore was handled in the ordinary manner by a cable and drum, and engine located at the surface. The top of the skip, when down, stood on a level with the floor of the drift. Ore cars filled with ore were

[1] Reported in 133 N. W. 479.

pushed from the drifts on track and dumped into the skip; a car of ore making a load for the skip. Two men usually handled one car, and it was usual to place a piece of lagging or slab of wood over the track to stop the cars at the proper point in front of the shaft. The mine was equipped with three pumps to take care of the water, and ordinary miners' candles were used for light. When the skip was loaded, the engineer was notified by pushing an electric button three times, and the skip was taken to the surface, unloaded, and returned without notice.

Plaintiff claimed that on the occasion of his injury he had come out of a drift to the shaft and saw two men with a car of ore at the shaft. One was in front, partially in the shaft, pushing, and the other was at the rear, pulling the car back; that the man in front was in danger of being hit by the returning skip, and that he caught hold of him and jerked him away, and, supposing that the car projected into the shaft, placed his left hand on the top of the front end to help pull it out of the way, when the skip came down and caught his hand, causing injury. He charged defendant with negligence in failing to maintain sufficient light to enable the men to stop the cars at the proper place to avoid the skip, and in failing to have a skip tender in charge to give proper signals of the approach of the skip. Plaintiff also pleaded and claimed that he had complained to the superintendent of the lack of light and need of a skip tender, and that he had promised to furnish them, relying on which plaintiff continued at work until the accident happened.

At the close of the case the court directed a verdict in favor of defendant, on the ground that the plaintiff was guilty of contributory negligence.

Plaintiff was the only witness on his side of the case, and his testimony as to the sufficiency of the light was contradicted by the men in charge of car and other miners. No evidence was offered by plaintiff to show that it was customary to furnish a skip tender in mines operated with the force of men then employed, and the evidence on that point offered on behalf of defendant was to the effect that it was not the custom and not necessary when mining operations were conducted on so small a scale. But plaintiff testified that the light was

not sufficient to enable him and the men to see where to stop the car, and to see the skip when coming down, in time to avoid it; and he also testified that two days before the accident he complained of the condition to the superintendent, who promised that the difficulty of keeping the candles lighted would be remedied and that a tender for the skip would be furnished. We proceed, therefore, to consider the case, accepting plaintiff's testimony in this respect as true, in so far as it stands unqualified by his own account and other admitted facts.

The plaintiff was shift boss, in full charge of the operations and of the men. He fully understood his duties, and frankly admitted that he knew the purpose of the electric bell signal system—three bells to ring the skip up, and one ring to stop it at any point on its way down. The bell button was within six feet from the car as it stood before the shaft. The light was sufficient for him to see that the men were trying to push the car back, and that one was behind it. He knew that the skip might return any moment, and that he could stop it by giving the signal. Instead of resorting to that easy and quick method of relieving the situation, he undertook to help push the car back out of the way. If he realized that the car and one of the men were in a dangerous position, he must have known that he placed his hand in an unsafe position. His explanation of his conduct was that he had no time to ring the bell. The system of signals was installed for the very purpose of controlling the skip on just such occasions. Defendant had reposed confidence in him, with the duty of conducting the business according to the system. The one-bell signal was an arrangement provided for the safety of the men and for his own protection, as well as for the protection of defendant's property. If the situation demanded quick action, the signal bell was there for the purpose of meeting the emergency. It was his business to enforce the rule to use it. His other duties did not prevent him from seeing that the men obeyed it. The emergency was not created by any act of negligence on the part of the defendant. The promise to protect the candles from falling water was not the cause of the accident according to plaintiff's own story, and the promise to furnish a skip tender did not justify him in ignoring the means of safety which had been placed at his command.

Affirmed.